Filed 10/5/15  P. v. Zuniga CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063776 |
| v. | (Super.Ct.No. RIF1402832) |
| JOSE L. ZUNIGA, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  J. Thompson Hanks, Judge.  (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Laurel Simmons, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Jose L. Zuniga pled guilty to assault by a person confined in a California state prison upon another individual with a deadly weapon and by means

1

of force likely to cause great bodily injury (GBI).  (Pen. Code § 4501; count 1.)[1]

Defendant additionally admitted he had actually inflicted GBI upon the victim

(§§ 12022.7, subd. (a), 1192.7, subd. (c)(8)), had suffered two prior prison terms

(§ 667.5, subd. (b)), and had suffered one prior strike conviction (§§ 667, subds. (c),

(e)(1), 1170.12, subd. (c)(1)).  The court sentenced defendant to an aggregate term of six

years' imprisonment, the amount specified in his plea agreement.

Defendant filed a notice of appeal.  This court appointed counsel to represent

defendant.  Counsel has filed a brief under the authority of *People v. Wende* (1979) 25

Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the

case, a statement of the facts, and identifying one potentially arguable issue:  whether

defendant was advised of his constitutional rights, the consequences of pleading guilty,

and whether he voluntarily and knowingly waived those rights before entering his plea.

We affirm.

## I.  FACTUAL AND PROCEDURAL HISTORY

Defendant admitted that on March 1, 2014, while in prison, he "got in an assault

situation with another person, and that person suffered great bodily injury . . . ."  The

People charged defendant by felony complaint with assault by a person confined in a

California state prison upon another individual with a deadly weapon and by means of

force likely to cause GBI.  (§ 4501; count 1.)  The People additionally alleged defendant

had caused GBI upon the victim of the assault (§§ 12022.7, subd. (a), 1192.7, subd.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

(c)(8)), had suffered three prior prison terms (§ 667.5, subd. (b)), and suffered one prior strike conviction (§§ 667, subds. (c), (e)(1), 1170.12, subd. (c)(1)). On October 6, 2014, during defendant's arraignment, the court advised defendant of his constitutional rights.

On April 10, 2015, defendant signed and initialed a plea agreement. Defendant initialed all five provisions of the plea agreement advising him of his constitutional rights to a speedy and public trial by a judge or jury, to face and cross-examine witnesses against him, to compel witnesses to attend trial and present evidence in his defense, against self-incrimination, to testify on his behalf, and to be represented by a lawyer at all proceedings paid for by the state if he could not afford one. Defendant initialed six relevant provisions of the agreement describing the consequences of the plea. Defendant initialed a provision of the agreement providing that he had had adequate time to discuss his constitutional rights and the consequences of the plea with his attorney.

The plea agreement provided that defendant would plead guilty to the count 1 offense, admit the GBI enhancement, admit two of the prior prison term allegations, and admit the prior strike conviction allegation. In return, the People agreed to the low term on the count 1 offense, a stay of punishment on the GBI enhancement, and dismissal of the remaining allegation. The court would sentence defendant to a total, determinate term of six years' incarceration.

Defendant signed the agreement indicating he had read and understood the agreement in its entirety. Defense counsel signed the agreement reflecting her belief that defendant understood his constitutional rights and the consequences of the plea.

3

At the plea hearing the same day, the court asked if defendant's initials and signature appeared on the plea form. Defendant responded that they did. When asked by the court if defendant understood everything on the form, defendant responded: "A little bit." The court replied: "Okay. We have to put it on further call because it has to be everything."

Returning sometime thereafter, the court again asked defendant if his initials and signature appeared on the plea form. Defendant responded that they did. The court again asked if he understood everything on it. Defendant responded: "Yeah." The court said: "You're a little hesitant. I'm willing to give you the time to go over it a little more." Defense counsel responded: "We went over it for two hours, your Honor."

The court and defendant then engaged in the following colloquy:

"THE COURT: Let me get right down to the heart of the matter. Are you okay mentally? Do you have any problems?

"[DEFENDANT]: No.

"THE COURT: Are you emotionally okay?

"[DEFENDANT]: Yeah.

"THE COURT: Do you understand English okay?

"[DEFENDANT]: Yeah.

"THE COURT: Because I'm perfectly happy to provide you with an interpreter if you need one.

"[DEFENDANT]: No.

4

"THE COURT: So what part do you not understand? Do you know how to read and write?

"[DEFENDANT]: No. It's a lot of questions right there. [¶] . . . [¶]

"THE COURT: It's very true. So I'll give you until 1:30 [p.m.] to go over this with your attorney."

Defense counsel interjected: "We already went over it for two hours, your Honor. At this point, I've advised him multiple times. I visited him in the jail in Indio. This deal did come just today, so I understand the situation. I don't mind coming back at 1:30 [p.m.], but I have fully advised my client."

The court and defendant then engaged in another colloquy:

"THE COURT: Okay. So here's where we're at, [defendant]. You said you went over the form, and you said you signed it, but you—you said yes, you understood it all, but then you're shaking your head no at the same time, so that gives me a little pause. So let me ask you a couple of question to see how you're doing. [¶] You have a right to a jury trial, a public jury trial, by a judge or a jury. Do you understand that?

"[DEFENDANT]: Yeah.

"THE COURT: And you're giving up that right so you can plead guilty?

"[DEFENDANT]: Yes.

"THE COURT: Because if you plead guilty, there's no jury trial.

"[DEFENDANT]: Yeah.

5

"THE COURT: And you have a right to face and cross-examine witnesses against you. If there's no jury trial, there's no cross-examination, so you give that up?"

Defendant and his counsel then engaged in an "Attorney/Client conference." Thereafter, defendant responded to the court's last question, "Yeah." Defendant and the court's discussion continued:

"THE COURT: If there's no jury trial, there's nobody to cross-examine. Do you understand that?

"[DEFENDANT]: Yeah.

"THE COURT: And you give that up?

"[DEFENDANT]: Yeah—well, I got a little question. [¶] . . . [¶] . . . All right. So with the—with that, without going to trial, they won't be able to cross-examine the victim, whatever.

"THE COURT: Right, because they won't bring in any witnesses. There won't be any trial. Do you understand that?

"[DEFENDANT]: Yeah.

"THE COURT: And are you okay with giving that up?

"[DEFENDANT]: Yeah.

"THE COURT: Okay. And then you have a right to have witnesses come in on your own behalf. If there was a witness that was helpful to you, the court would make that person come in and testify on your behalf, unless there's gonna be no trial. And that's not going to happen. Do you understand that?

6

"[DEFENDANT]: Yes.

"THE COURT: And you give up that right?

"[DEFENDANT]: Yes.

"THE COURT: And then you have a right not to testify against yourself. You don't have—if there was a trial, you could testify if you wanted to, or you could decide not to testify. Either one would be okay. But since there's going to be no trial, you have no right to.

"[DEFENDANT]: Yes.

"THE COURT: You want to give up that?

"[DEFENDANT]: Yes.

"THE COURT: And then you have a right to a lawyer throughout your trial. And you have a lawyer, it's just that you're not going to have one at your trial because there's going to be no trial. Do you understand that?

"[DEFENDANT]: Yes.

"THE COURT: Okay. Good. [¶] And you give that up?

"[DEFENDANT]: Yes.

"THE COURT: Okay. And then there's what we call collateral consequences. There'[s] stuff like, you can't have a firearm because you're a felon. Do you understand that?

"[DEFENDANT]: Yes.

7

"THE COURT: And even though some things may just be dismissed, there is restitution. Even on the dismissed counts, you gotta pay it . So if you've got two guys, and you both got convicted of Count 1, assault, you still have two guys. Do you understand that?

"[DEFENDANT]: Yes.

"THE COURT: If you're not a citizen of the United States, you could get deported. Do you understand that?

"[DEFENDANT]: Yes.

"THE COURT: You're going to be on parole, and you understand that, after you get done with all your time?

"[DEFENDANT]: Yes.

"THE COURT: And, let's see, what else do we have. [¶] And there's—no promises have been made to you other than the agreement that you're going to get the low term times two plus two prison priors for a total of six years. That's going to be consecutive to some [Los Angeles] case, so you're getting six years on this consecutive. Do you understand that's what the deal is?

"[DEFENDANT]: Yes.

"THE COURT: Do you have any questions?

"[DEFENDANT]: No.

"THE COURT: Okay. Did you understand everything I explained to you?

"[DEFENDANT]: Yes. [¶] . . . [¶]

"[THE COURT:] Do you give up all these rights so you can plead guilty?

"[DEFENDANT]: Yes."

Defendant then entered his plea as discussed above. The matter was set for sentencing with another judge.

On the date set for sentencing, defense counsel indicated defendant wished to withdraw his plea. Defendant and the court engaged in the following dialogue:

"[DEFENDANT]: I wasn't fully aware of what I was signing, and I felt a little mislead [*sic*] sort of signing the papers, whatever I signed. I didn't really comprehend the whole thing, period. As I felt a little pressure sort of, you know what I mean, everything happened all of a sudden.

"THE COURT: Did you talk to your lawyer about the plea bargain?

"[DEFENDANT]: Yeah. It was lack of communication because I really wasn't— I didn't really comprehend the whole thing, you know what I mean.

"THE COURT: Your lawyer didn't tell you what was going to happen?

"[DEFENDANT]: Yeah. Little bit. I felt like it was no type of support toward me in my best interest.

"THE COURT: In what way?

"[DEFENDANT]: On the—on the whole thing of—I can't—well, I'm not really good in speaking, sir, you know what I mean?

"THE COURT: Well, you haven't told me anything. You keep saying that you didn't feel supported, that you didn't understand, what didn't you understand?

9

"[DEFENDANT]: What I was signing.

"THE COURT: Did they tell you you were going to plead guilty to a felony, and you were going to admit two prison priors and a strike[?]

"[DEFENDANT]: Yeah. Well, yeah, sort of, yeah.

"THE COURT: They did. Okay. [¶] Did they tell you what you were going to be sentenced to?

"[DEFENDANT]: Yeah. I wasn't fully aware of the whole—

"THE COURT: You didn't know what it meant to be sentenced to six years in prison[?]

"[DEFENDANT]: Well, the other thing I didn't know what I was signing, I knew I was signing six years, but I didn't know I was signing to other stuff.

"THE COURT: What other stuff?

"[DEFENDANT]: Whatever it carried with it."

Defense counsel attempted to clarify the situation: "I spent—and I specifically remember this day. We actually put it on second call a couple times. I spent over an hour. I had visited with [defendant] numerous times. I drove out to Indio to speak with him and gave him all the copies of discovery and went over exposure which was in excess of 19 years. I negotiated this deal for months with [the prosecutor]. It was my opinion it was in his best interest. He decided to take the deal. [¶] We put the case on second call so he could have more time to talk to me. I explained everything in detail to [defendant]. I even put it in my notes, I checked defendant['s] data this morning, how

10

much time I spent with him.  In my notes it says  [¶]  . . .  [¶]  . . . numerous hours at least in court with him."

Defendant stated he "felt pressured like I needed to sign papers . . . or things were going to get worse . . . ."  Defense counsel explained the prosecutor offered her the deal at 8:30 or 9:00 in the morning and that it was good that day only.

Defendant and the court engaged in another discussion:

"[DEFENDANT]:  I didn't understand why—why it was all of a sudden, like I had to do it there and then, you know what I mean?

"THE COURT:  . . . They told you this was the deal you were going to get that day.  If you didn't take the deal it was going to be worse in the future.  Now, that's what I just understood that was said.  Was there something different that you understood?

"[DEFENDANT]:  Yeah.  Because I didn't want to sign, you know what I mean.

"THE COURT:  Did you tell somebody you didn't want to sign?

"[DEFENDANT]:  I told her."

Defense counsel noted:  "That's not true, your Honor."  The court looked at the plea agreement, noted nothing appeared "vague or uncertain about it," and noted defendant's initials next to the provisions discussing his constitutional rights.  The court asked what part of the agreement defendant did not understand.

Defendant responded:  "Well, I didn't understand the whole part of the time, like, I didn't note the time, I felt confused, you know, what I mean.  All the questions, too, at

the same time and such short notice. So she was like, well I needed to sign it, you know what I mean. And I just felt pressure in signing it . . . ."

The court denied defendant's motion to withdraw the plea. The court sentenced defendant as contemplated in the plea, imposed various fines and fees, and dismissed the remaining allegation.

Defendant filed a notice of appeal in which he asserted he "was misinformed[,] he did not understand what his constitutional trial rights were[,] and that he was giving up those [rights]. The defendant la[c]ked the mental capacity to make an informed and voluntary decision about whether to plead guilty."

Defendant requested a certificate of probable cause asserting he had sustained traumatic brain injury making him "slow to process and comprehend external information [for which he] experiences considerable difficulty when trying to verbally express himself[,] a condition readily apparent by the [defendant's] speech impediment." Defendant contended the plea was "sprung" on him and he was "overwhelm[ed]" by trial counsel who "forced," "rushed," and "bullied" him to enter the plea. The court granted defendant's request for a certificate of probable cause.

## II. DISCUSSION

We offered defendant an opportunity to file a personal supplemental brief, which he has not done. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues.

12

## III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

KING _____

J.

We concur:

HOLLENHORST _____
              Acting P. J.

McKINSTER _____
              J.